Lawrence J. RHOADES

v.

Nancy Davis PRYCE, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 2004.

Filed April 28, 2005.

Ray F. Middleman, Wexford, for appellant.

Joseph M. Wymard, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, LALLY–GREEN, TODD, KLEIN, and BOWES, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 Nancy Davis Pryce appeals three orders of the Court of Common Pleas of Allegheny County finding her in contempt and ordering her to pay counsel fees to appellee's counsel. We affirm.

¶ 2 The parties were married on July 31, 1976 and separated on March 17, 1997. The trial court subsequently granted bifurcation, and the parties were divorced by a final decree dated April 20, 1999. On July 26, 2000, the trial court entered an order effectuating equitable distribution. This order, *inter alia*, required appellee ("Husband") to acquire a life insurance policy, naming appellant ("Wife") as the irrevocable beneficiary, to secure the equitable distribution award which was to be paid in installments. Husband must pay Wife $14,867.09 per month over a term of 15 years for a total of $1,761,806. Husband

was permitted to reduce the insurance coverage to the extent that the equitable distribution award to Wife was satisfied. The trial court order required both parties to sign any documents necessary to carry out the provisions of the equitable distribution scheme.

¶ 3 On September 9, 2002, Husband sought to reduce the amount of insurance coverage under the policy from $1.7 million to $1.6 million. Wife refused to sign the authorization to allow Husband to reduce the face amount of the insurance policy. Husband filed a petition for special relief with the trial court. On October 2, 2002, the trial court ordered Wife to sign the authorization to reduce the amount of coverage once the insurer confirmed in a written statement that her signature was necessary to reduce the coverage.

¶ 4 By letter dated October 28, 2002, senior counsel from the John Hancock Life Insurance Company confirmed in writing that Wife's signature was required in order to reduce the policy coverage. Thereafter, on October 31, 2002, Husband filed another petition seeking to have Wife adjudicated in contempt for failing to comply with the July 26, 2000 equitable distribution order and the October 2, 2002 order directing her to sign the authorization.

¶ 5 On February 18, 2003, the parties appeared before Hearing Officer Annette Tierney at which time Husband presented the letter from his insurer stating that Wife's signature, as an irrevocable beneficiary, was necessary in order for Husband to reduce his coverage. Husband's counsel further stated that he sent this letter to Wife's counsel, and Wife still refused to provide her signature. At the conclusion of the hearing, the hearing officer entered the following temporary order:

After hearing, [Wife] is in civil contempt to the 7–26–0[0] order and the October 2, 2002 order and may purge by signing the 'request with respect to policy or application' within 10 days of this date to effectuate the reduction in coverage. [Husband] is awarded counsel fees of $750, to be paid by [Wife] to [Husband's counsel] by 2–28–03.

Temporary Order, 2/21/03 document # 158. Wife filed exceptions to this order, and the trial court held oral arguments on March 28, 2003. Wife's exceptions were subsequently denied, and the order was made final on April 17, 2003. Wife filed an appeal from this order which was docketed at No. 947 WDA 2003.

¶ 6 On May 28, 2003, a compliance review hearing was held. The trial court determined that Wife continued to refuse to sign the necessary authorization that would permit Husband to reduce his coverage. On June 3, 2003, the trial court entered an order in which it held Wife remained in contempt of the court's July 26, 2000 and October 2, 2002 orders. The trial court directed that Wife pay an additional $1,500 in counsel fees to Husband's attorney and directed the Allegheny County Prothonotary to annually sign the consent on Wife's behalf to reduce the amount of the policy coverage. Wife filed an appeal from this order which was docketed at No. 1198 WDA 2003.

¶ 7 Husband filed an additional petition for sanctions after Wife failed to pay counsel fees as directed by the trial court's June 3, 2003 order. On August 15, 2003, the trial court entered an order finding that Wife remained in contempt and directed her to pay an additional $750 in counsel fees. Further, the trial court permitted Husband to withhold $2,250 from his September 2003 equitable distribution obligation to satisfy Wife's obligations under the previous orders. Wife filed an appeal from this order which was docketed at No. 1632 WDA 2003. Wife's three appeals have been consolidated sua sponte.

■ ¶ 8 These appeals were certified by a panel of this court specifically to address whether the orders in question are appealable.[1] *See Glynn v. Glynn,* 789 A.2d 242, 246 (Pa.Super.2001) *(en banc )* (it is incumbent upon this court to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order). Resolution of this point goes to the jurisdiction of this court to entertain the appeals. *Sargent v. Sargent,* 733 A.2d 640, 641 (Pa.Super.1999).

■ ¶ 9 "An appeal may be taken only from a final order, unless otherwise permitted by rule or statute." *Hoffman v. Knight,* 823 A.2d 202, 205 (Pa.Super.2003); Pa.R.A.P. 341(a), 42 Pa.C.S.A. Generally, an order finding a party in contempt is interlocutory and not appealable unless it imposes sanctions. *Wolanin v. Hashagen,* 829 A.2d 331, 332 (Pa.Super.2003). An often litigated issue in this area involves conditional sanction orders. *Id.* Such orders impose a sanction, but also include a purge condition, that is, a means of avoiding the sanction. *Id.*

When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were the case, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. *Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary* *that the order impose sanctions on the alleged contemnor, and no further court order be required before the sanctions take effect.*

*Id.* at 332–333 (emphasis added), quoting *Foulk v. Foulk,* 789 A.2d 254, 258 (Pa.Super.2001) *(en banc ).*

■ ¶ 10 Instantly, Wife was adjudicated in contempt, directed to sign the necessary insurance form, and pay Husband's counsel's fees. The question we must first answer is whether counsel fees can serve as a sanction. If the imposition of counsel fees is a sanction, then the orders are final and this matter is properly before us.

¶ 11 Recently, in *Gunther v. Bolus,* 853 A.2d 1014 (Pa.Super.2004), *appeal denied,* 578 Pa. 709, 853 A.2d 362 (2004), this court addressed whether the trial court imposed a criminal sanction after finding Bolus in civil contempt. *Id.* at 1016. In discussing sanctions, the court stated:

The typical sanction for civil contempt is remedial in nature. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period.

*Id.*

¶ 12 In *Diamond v. Diamond,* 792 A.2d 597 (Pa.Super.2002), which involved a marital dissolution proceeding, husband filed a

---

1. Inexplicably, neither party has addressed this issue even though specifically directed by this court to do so.

motion for contempt after wife's lawyer failed to comply with a court order to pay for the replacement of husband's bank records which were lost by wife's lawyer's office. The trial court found wife's lawyer in contempt and ordered her to pay $500 of husband's attorney's fees and $60 of filing fees that husband incurred seeking compliance with the May 1999 order. *Id.* at 599. This court concluded that this contempt order was appealable because it was a final order imposing sanctions upon wife's lawyer. *Id.* at 600.

¶ 13 In *Mrozek v. James,* 780 A.2d 670 (Pa.Super.2001), former employers brought an injunctive action against former employees, seeking to enforce non-compete clauses of employment agreements. *Id.* at 671. The court discussed sanctions for civil contempt proceedings as follows:

Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order. *Goodman v. Goodman,* 383 Pa.Super. 374, 556 A.2d 1379, 1392 (1989). Attorneys' fees and other disbursements necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. *Schnabel Associates, Inc. v. Building and Constr. Trades Council,* 338 Pa.Super. 376, 487 A.2d 1327, 1338 (1985). Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive. *Goodman,* 556 A.2d at 1392. Counsel fees are a proper element of a civil contempt order. *Id.* In reviewing a grant of attorney[s'] fees, we will not disturb the decision below absent a clear abuse of discretion. *Id.*

Here, Appellants were ordered to pay compensatory damages to Appellees for attorneys' fees, investigation costs, deposition fees, and subpoena and witness fees incurred as the result of Appellants' contempt. *These sanctions are proper elements of a civil contempt order because they are coercive and compensatory. See Schnabel Associates Inc.,* 487 A.2d at 1338. The award of attorneys['] fees is an appropriate remedy in a civil contempt case, separate and apart from the statutory provision for attorney[s'] fees under 42 Pa.C.S.A. 2503(7). We find no abuse of discretion by the trial court in awarding these attorneys['] fees.

*Id.* at 674 (emphasis added).

¶ 14 In *Lachat v. Hinchcliffe,* 769 A.2d 481, 488 (Pa.Super.2001), a case involving a land dispute, this court found that the trial court's order included both a finding of contempt against Hinchliffe and a directive to make remedial payment to the Lachats' daughter and son-in-law for surveyor's fees and attorney's fees. We concluded that the terms of the trial court's order explicitly imposed "sanctions" and therefore the order *was* final and appealable for the purposes of Rule of Appellate Procedure 341 (Final Orders).

¶ 15 Based on such clear authority, the imposition of counsel fees can constitute a sanction. We take this opportunity to review this court's decision in *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) (*en banc*). In *Sonder,* the appellant appealed from an October 24, 1985 order of the trial court that adjudicated him in contempt, ordered him to pay $29,800 in support arrearages "forthwith," and directed appellant to pay $1,000 in counsel fees and the expenses of enforcing the terms of the agreement. *Id.* at 159. This court held that appellant appealed from an inter-

locutory order "as no sanctions were imposed."[2] *Id.* at 159 n. 1.

¶ 16 In concluding that the October 24, 1985 contempt order was "interlocutory as no sanctions were imposed," the court cited four cases as support for its conclusion. *Id.* However, none of these cases provides support for the proposition that counsel fees cannot be considered sanctions on a finding of contempt. *See Steel v. Weisberg*, 368 Pa.Super. 590, 534 A.2d 814, 816 (1987) (finding that an order which declared a party in contempt and which imposed a $25 conditional fine constituted a final and appealable order since no further order of court was required before the sanction would become effective); *McManus v. Chubb Group Ins. Cos.*, 342 Pa.Super. 405, 493 A.2d 84, 87 (1985) (stating that an order which declared a party in contempt for failing to comply with a discovery order, directed the contemnor to pay costs of the hearing and the prior assessment of costs within 21 days or have her case dismissed, did not constitute a final and appealable order where the contemnor appealed before the expiration of the purge period); *In re Koll*, 311 Pa.Super. 212, 457 A.2d 570 (1983) (declaring an appeal from a contempt order interlocutory until a sentence is imposed); *Hester v. Bagnato*, 292 Pa.Super. 322, 437 A.2d 66, 67 (1981) (finding an order adjudicating a party in contempt and directing specific performance was interlocutory as the trial court had not imposed a sanction).

¶ 17 Clearly, the focus of the *Sonder* court's concern with the October 24, 1985 order was that sanctions for contempt cannot simply be a requirement that the con-

temnor do as directed, *i.e.*, pay arrearages. "[I]n the Order of October 24, 1985, while a finding of contempt was entered and an Order of specific performance imposed, no sanctions were imposed, therefore, this Court is powerless to grant appellant relief on that Order since he has yet to suffer harm or penalty." *Id.* at 160. The *Sonder* court never addressed whether attorney fees alone can be considered a sanction. In light of the above, to the extent that *Sonder* has been construed to suggest that counsel fees cannot be considered a sanction, that interpretation is rejected.

¶ 18 Under the facts of the present case, we find that as a result of Wife's contemptuous conduct, *i.e.*, her repeated refusal to sign the authorization, she was ordered to pay Husband's counsel fees. We conclude that the imposition of the payment of Husband's counsel fees on Wife served as a sanction. Thus, the orders in the instant matter are final and appealable. We can now turn to the substantive issue raised by Wife.

■ ¶ 19 Initially, we note that our scope of review when considering an appeal from an order holding a party in contempt of court is narrow. *Hyle v. Hyle*, 868 A.2d 601, 2005 WL 289340, at *2 (Pa.Super.2005). We will reverse only upon a showing of an abuse of discretion. *Lachat*, 769 A.2d at 487. This court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. *Id.*

■ ¶ 20 Wife argues the trial court erred in finding her in contempt as it had

---

**2.** Notwithstanding that holding, the *Sonder* court also found that a separate order directing husband to pay "$10,000 forthwith or [be] commit[ed] to jail for 90 days," was final and appealable. 549 A.2d at 166. The second order imposed sanctions on husband in the form of a jail sentence, and contained a purge condition, *i.e.*, that husband pay $10,000 forthwith. The *Sonder* court explained that "[t]here is no question [that] this is an appealable Order as a final contempt Order was entered after hearing in compliance with *Crislip* [*v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976)]." *Id.*

not yet determined if the conditions of its October 2, 2002 order had been satisfactorily met. Specifically, Wife asserts that she should not have been found in contempt because there was never a conditional order that required her to sign the authorization to reduce the insurance coverage. We disagree.

¶ 21 Turning to the trial court's July 26, 2000 equitable distribution order, we note paragraph 18 states:

18. The balance of Wife's distribution, $1,761,806, is to be made by Husband to Wife in a long-term payout in equal monthly installments spread out over a 15–year period at 6% per annum. As security for the amount, Husband shall initially maintain a life insurance policy with Wife as irrevocable primary beneficiary in an amount of not less than $1,700,000. Annually thereafter, Husband may reduce the amount of insurance coverage to the extent that he satisfied a portion of the outstanding debt to Wife.

Certified record, 7/26/00 Equitable Distribution Order, document # 69 at 8.

¶ 22 The order further provided:

22. The parties shall sign any and all documents necessary to effectuate the terms of this order.

*Id.* at 9.

¶ 23 In accordance with the July 26, 2000 order, Wife was required to sign all documents necessary to effect the terms of the order. Moreover, on October 2, 2002, following consideration of Husband's petition to enforce and the related oral argument, the trial court ordered:

If John Hancock confirms in written communication that the signature of [Wife] is required to reduce the face amount of the policy annually then [Wife] is hereby ordered to sign the John Hancock application to reduce the face amount of Policy No. 75109753 on which she is the irrevocable beneficiary to a face amount of $1,600,000 as of October 1, 2002.

Certified record, 10/2/02 order, document # 149. Wife was given the benefit of the doubt as to whether her signature was required. By letter dated October 28, 2002, senior counsel at the John Hancock Life Insurance Company responded as follows:

Please be advised that this will confirm that the signature of [Wife] is required to reduce the face amount of Policy Number 75109753 since she is named as irrevocable beneficiary on this policy. This letter responds to the Order of Court dated October 2, 2002, in the above matter.

Notes of testimony, 2/18/03 at 5.

¶ 24 The words could not be clearer. Wife, however, asserts it is not necessary for her to sign the authorization to reduce the policy coverage. Wife bases her position on a letter received from a law firm representing John Hancock dated October 29, 2002. The letter was written in response to a deposition notice John Hancock received from Wife's counsel. Apparently, Wife filed a complaint purporting to assert a claim for a declaratory judgment against John Hancock regarding the legal effect of the terms of the life insurance policy purchased by Husband. Wife's position is based on one sentence in the letter: "The policy issued to Husband is a document that speaks for itself." We find this hardly supports Wife's position especially in light of the October 28, 2002 letter from the senior counsel at John Hancock stating Wife's signature is required.

¶ 25 The hearing officer determined that Wife had failed to sign the authorization and that her conduct was willful and served no legitimate purpose. The trial court stated that Wife continuously refuses

to do what she has been ordered to do. (Trial court opinion, 12/23/03 at 3.)

¶ 26 As contempt proceedings may be used to effect compliance with any equitable distribution order, we find no abuse of discretion here. *See* 23 Pa.C.S.A. § 3502(e)(9). The orders of the trial court are affirmed.