J-S70042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SAMUEL A. MORGANTE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY S. MORGANTE | : | No. 597 MDA 2017 |

Appeal from the Order Entered March 7, 2017
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): 11-20,065

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED MAY 22, 2018**

Samuel A. Morgante (Husband) appeals from the order entered March 7, 2017, in the Court of Common Pleas of Lycoming County, finding him in contempt and ordering him to pay Kelly S. Morgante (Wife) a lump sum payment of $31,888.85 on or before May 31, 2017, to make monthly payments to Wife, commencing April, 2017, in the amount of $911.11 either directly from the Navy retirement pay and/or through direct payments from Husband, and to pay Wife's counsel fees in the amount of $750.00. The trial court's order provides Husband's obligation to pay counsel fees to Wife's counsel would be suspended upon the condition that Husband make the lump sum payment to Wife of $31,888.85 on or before May 31, 2017. *See* Order, June 9, 2014, at ¶4.

Husband contends the trial court erred in (1) finding him in contempt and awarding Wife counsel fees, (2) ordering him to pay Wife an equitable

distribution sum from monies Wife elected to include in his income to calculate child support, (3) ordering him to make direct payments to Wife, (4) failing to consider the tax consequences of the lump sum and monthly payments, (5) failing to require Wife's payment from his retirement to be distributed by a Qualified Domestic Relations Order (QDRO), (6) failing to give him credit toward the lump sum because he had paid child support, alimony *pendente lite*, and mortgage contributions based on his retirement income, and (7) utilizing June 9, 2014, as the retroactive date under the order. Based upon the following, we affirm.

By way of background, the parties were married on May 16, 1987, and separated on February 14, 2010. Husband's Navy pension is in pay status. A final decree in divorce was entered on January 14, 2014.

The facts and procedural history relevant to this appeal have been summarized by the trial court in its opinions filed March 7, 2017, and May 31, 2017. For purposes of our discussion, we reiterate the court's summaries, as abbreviated, below:

> By way of background, a Master's Hearing in regard to Equitable Distribution was held on August 31, 2012; October 12, 2012; December 9, 2012; supplemented by an Order of Court dated March 5, 2013. A Master's Report and Recommendation in regard to Equitable Distribution was filed on June 25, 2013. … Subsequently, Husband filed Exceptions on July 10, 2013, and Amended Exceptions on July 15, 2013. …
>
> An Amended Master's Report on Equitable Distribution was issued on November 19, 2013. …

On November 20, 2013, Husband filed Exceptions to the Amended Master's Report. On December 30, 2013, the [trial court] heard argument by the parties on the outstanding Exceptions. On June 9, 2014 th[e trial c]ourt issued an Opinion and Order ruling on Husband's Exceptions. … Husband filed a Notice of Appeal on June 30, 2014, and Amended Notice of Appeal on July 9, 2014. On June 26, 2015, the Superior Court issued an Opinion affirming the Trial Court's O[rder] of June 9, 2014. [**Morgante v. Morgante**, 119 A.3d 382 (Pa. Super. 2015).]

… Pursuant to the Master's Report dated June 25, 2013, and this Court's Order dated June 9, 2014, which was affirmed by the Superior Court Order dated June 26, 2015, Wife shall receive the sum of $567,201.26 as her equitable distribution portion of the marital estate. It was further ordered that this payment would be made by Wife receiving a monthly payment from Husband's disposable retirement income. To protect Wife's interest in the equitable distribution portion of the marital estate, the Court Order further indicates that if Husband's Navy Pension (retirement income) is reduced in any way which reduces the amount or share of retired pay to which Wife is entitled, such as receipt of disability pay, then Husband will make direct payments to Wife to indemnify and hold her harmless from any reduction, costs or damages which she may incur. The minimum payment which Wife is to receive either directly from the Navy Pension and/or through direct payments from Husband is $911.11 per month, plus consideration of the associated COLAs [Cost of Living adjustments]. The Court's Order further directed that a qualified domestic relations order [QDRO] would be prepared directing payments to Wife of 47.652%[1] of Husband's monthly Navy Pension to be prepared and submitted by Husband's attorney within thirty days of the date of the Court's Order of June 9, 2014.

Trial Court Opinion, 3/9/2017, at 1-4.

Wife filed her Petition for Contempt on September 23, 2016, alleging that Husband and his attorney have been uncooperative since September 2015 in providing additional information requested by Wife's actuarial consultant, and therefore the QDRO

---

[1] "The Master … found that the $567,201.26 payment owed to Wife in equitable distribution is 47.652% of the present value of Husband's disposable retired pay." **Morgante v. Morgante**, 119 A.3d 382, 392 (Pa. Super. 2015).

had not been prepared. Wife further alleges that Husband had not made any payments of the $911.11 minimum to which she was entitled under the Order of June 9, 2014. A hearing was held on January 9, 2017. At that time, Husband argued that the $911.11 minimum monthly payment obligation did not commence until the QDRO was in place and distributed directly to Wife from his Navy Retirement pay. He further argued that the full amount of his Navy Retirement pay is included in his income for child support and spousal support calculation purposes and, therefore, it would be considered impermissible "double-dipping" for Wife if she were to receive her payments directly from Husband prior to the QDRO being implemented. …

Trial Court Opinion, May 31, 2017, at 3-4.

By Order entered March 7, 2017, the trial court found Husband in contempt for his failure to comply with the court's order of June 9, 2014. The trial court ordered him to pay Wife a lump sum of $31,888.85 (representing monthly payments of $911.11 from June 2014 through March 2017) by May 31, 2017, to pay Wife $911.11 monthly, commencing April, 2017, either through his Navy Retirement pay or directly from Husband, and to pay Wife $750.00 in counsel fees. However, the obligation to pay attorney fees was to be suspended upon Husband making the required lump sum payment to Wife by May 31, 2017. This appeal followed.[2] Subsequently, Husband filed a request for a stay, pursuant to Pennsylvania Rule of Appellate Procedure 1731, and the trial court denied the request in part, and granted the request in part.[3]

---

[2] Husband timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[3] The trial court explained:

In his first issue, Husband contends the trial court erred in finding him in contempt and awarding attorney fees because the order was not clear, definite and specific and he did not act with wrongful intent. Husband argues there is no language in the order that specifies immediate, direct payment to Wife. He asserts the only explicit language is to prepare a QRDO within 30 days and submit it to Wife, and to pay $911.11 directly to Wife when the amount received by Wife is reduced below that amount. Husband maintains he complied with the order by submitting a QDRO within the timeframe directed by the trial court. Husband further contends that even if the order is

_____

Husband filed a Motion for Stay of the Order on April 5, 2017, and an Amended Motion for Stay of the Order on April 19, 2017. A hearing was held on May 5, 2017, regarding the Motions. By Order dated May 8, 2017, Husband's request for a stay of the monthly payment to Wife in the amount of $911.11 commencing in April 2017, was denied. Husband's request for a stay with regard to the lump sum payment in the amount of $31,888.85 on or before May 31, 2017, was granted. The Court found that there were reasonable grounds for a difference of opinion as to whether or not the lump sum payment ordered by the Court in its March 7, 2017, Order was appropriate. Pursuant to Pa.R.A.P. 1731(b), Husband was directed to pay a bond in the amount of $31,888.85 in cash or property with the Prothonotary of Lycoming County on or before May 31, 2017. Husband's request for a stay of the required payment of $750.00 in counsel fees, which would have been suspended upon payment of the lump sum amount on or before May 31, 2017, was granted, and the payment was stayed pending a decision from the Superior Court on the lump sum payment.

Trial Court Opinion, 5/31/2017, at 4-5.

found to confer a duty on him to make direct payments to Wife regardless of whether a QDRO is in place, the order is ambiguous and there is a reasonable interpretation to the contrary. In this regard, Husband points to the trial court's order granting, in part, his request for a stay, finding that "there are reasonable grounds for a difference of opinion as to whether or not the lump sum payment in the amount ordered by the Court is appropriate." Stay Order, 5/8/2017 at 2.

> Our standard of review is well settled:
>
> "When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." **Harcar v. Harcar**, 2009 PA Super 203, 982 A.2d 1230, 1234 (Pa. Super. 2009) (quoting **Hopkins v. Byes**, 2008 PA Super 172, 954 A.2d 654, 655 (Pa. Super. 2008)). We also must consider that:
>
> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.
>
> **Langendorfer v. Spearman**, 2002 PA Super 93, 797 A.2d 303, 307 (Pa. Super. 2002) (quoting **Garr v. Peters**, 2001 PA Super 110, 773 A.2d 183, 189 (Pa. Super. 2001)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." **Godfrey v. Godfrey**, 2006 PA Super 39, 894 A.2d 776, 780 (Pa. Super. 2006). Additionally, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order." **Lachat v. Hinchliffe**, 2001 PA Super 50, 769 A.2d 481, 488 (Pa. Super. 2001).

**Habjan v. Habjan**, 73 A.3d 630, 637 (Pa. Super. 2013).

The June 9, 2014 order for equitable distribution underlying the present contempt order under appeal provided, in relevant part:

It is therefore ORDERED and DIRECTED as follows:

A QDRO directing payments to Wife of 47.652% of Husband's monthly Navy pension shall be prepared and submitted by Husband's attorney within 30 days of the date of this Order.

If [Husband's] Navy Pension is reduced in any way which reduces the amount or share of retried [sic] pay to which [Wife] is entitled, such as the receipt of disability pay, then he will promptly make direct payments to [Wife] to indemnify her and hold her harmless from any reduction, costs or damages which she may occur [sic]. **The minimum payment which Wife shall receive either directly from the Navy Pension and/or through direct payment from Husband's $911.11 per month plus applicable COLAs.**

Order, 6/9/2014 (emphasis added).

The trial court rejected Husband's argument that the $911.11 payment per month to Wife only commenced once the QDRO was in place, and found him in contempt, reasoning:

… Husband, in violation of the Court's Order which was affirmed by the Superior Court, made zero minimum monthly payments of $911.11 from June 9, 2014, through March of 2017. Husband's justification for doing so is twofold. First, he argues that the language of the June 9, 2014, Order specifically required direct payments to Wife only if his disposable retirement pay was reduced in any way, and that his payment was not reduced at all and therefore fully available to Wife via QDRO, and in fact was not distributed solely due to Wife's recalcitrance. Second, he argues that this Court erred in not requiring Wife's payment to be distributed by QDRO as was the agreement of the parties and the Court Order.

Husband is of the opinion that the monthly minimum payments were not to begin until the QDRO was in place. He further argues that this Court erred in utilizing June 9, 2014, as the retroactive

date under the contempt Order, presumably because there was no QDRO in effect on that date. This Court's Order of June 9, 2014, although it states that a QDRO shall be prepared and submitted by Husband's attorney within 30 days of the date of the Order, does not state that Wife's minimum monthly payments were contingent on the QDRO being in place. The Order stated that "the minimum payment which Wife shall receive either directly from the Navy Pension and/or through direct payment from Husband is $911.11 per month plus applicable COLAs." As stated in this Court's Order of March 7, 2017, Husband's retirement payments were intended to be used for the monthly payment to Wife, but not mandated. The Order indicated that a minimum monthly payment of $911.11 was to be made to Wife. The Court's June 9, 2014, Order permitted Husband to satisfy his equitable distribution obligation over time rather than in a lump sum, which was a benefit to Husband. The amount and the frequency of the payment was Ordered by the Court. The source of the payment or the method by which it was received was not. An Order [QDRO] requiring direct payment to Wife would certainly promote efficiency, but was not required prior to the payment obligation commencing.

****

Additionally, this Court did not err in awarding counsel fees to Wife. The Divorce Code grants trial courts broad power to enforce equitable distribution orders and to provide remedies in the event of failure to comply with orders of equitable distribution. ***Prol v. Prol***, 935 A.2d 547, 553 (Pa. Super. 2007). This Court found Husband in contempt for his failure to pay to Wife, for 35 consecutive months, the monthly minimum amount required of him under the June 9, 2014, Order. Attorneys' fees and other disbursements necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. ***Rhoads v. Pryce***, 874 A.2d 148, 152 (Pa. Super. 2005). Because an award of counsel fees is "intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive. . ." ***Id.*** Counsel fees are a proper element of a civil contempt order. ***Id.*** In reviewing an award of counsel fees, an appellate court will not disturb the decision below absent a clear abuse of discretion. ***Id.*** This Court's award of $750.00 to Wife in counsel fees to [sic] is reasonable considering she had to expend time and money to enforce an Order on which she received no payments for more

than two years at the time of the filing of the petition. Furthermore, this Court initially permitted Husband to avoid the payment of counsel fees if he paid the entire lump sum owed to Wife by May 31, 2017, and subsequently, by Order dated May 8, 2017, stayed the requirement that Husband pay counsel fees until a decision is rendered by the Superior Court regarding the lump sum payment. Husband's argument regarding the award of counsel fees is without merit.

Trial Court Opinion, May 31, 2017, at 7-8.

Based on our review, we likewise find that pursuant to the trial court's June 9, 2014, order, Wife was entitled to $911.11 per month from Husband's Navy pension regardless of the existence of a QDRO. The language of the order did not condition Wife's monthly payment on a QDRO. In addition, the order specifically provided that "The minimum payment which Wife shall receive either directly from the Navy Pension and/or through direct payment from Husband's $911.11 per month plus applicable COLAs." Order, 6/9/2014. Moreover, as this Court pointed out in Husband's appeal of the June 9, 2014, order, the trial court "afforded Husband the opportunity to pay his equitable distribution obligation to Wife over time through monthly payments, rather than in a lump sum," which inured to his benefit. *Morgante v. Morgante*, 119 A.3d 382, 394 (Pa. Super. 2015). Finally, while Husband states the order is ambiguous, we find no basis upon which to accept Husband's argument that essentially posits the provision for the QDRO could suspend the order indefinitely. Therefore, as we find the June 9, 2014 order is clear and unambiguous, we conclude the trial court did not abuse its discretion in finding

Husband in contempt for failure to make monthly payments to Wife, commencing on June 9, 2014.

In his second issue, Husband argues the trial court erred in ordering him to pay Wife an equitable distribution sum from monies Wife elected to include in Husband's income to calculate support constituting a double dip of an asset.

It is well-settled that "money included in an individual's income for the purpose of calculating support payments may not also be labeled as a marital asset subject to equitable distribution." *Miller v. Miller*, 783 A.2d 832, 835 (Pa. Super. 2001) (quoting *Rohrer v. Rohrer*, 715 A.2d 463, 465 (Pa. Super. 1998)).

In the trial court, Husband filed a motion to reopen/clarify record, raising the issue of the inclusion of his Navy retirement and disability payment in his income. This issue was similar to the issue raised in Husband's exceptions. Thereafter, Husband filed an exception to the Amended Master's Report, contending that the Master erred in her finding of incomes/income capacity for both parties. However, after the trial court denied the exception, Husband did not appeal the issue of inclusion of his retirement pay as both income and an asset to be distributed in equitable distribution. Under the doctrine of *res judicata*, Husband may not now raise this issue when it was litigated prior to the trial court's June 9, 2014, order, and not included in Husband's prior appeal.

"*Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action." **Balent v. City of Wilkes-Barre**, 669 A.2d 309, 313 (Pa. 1995). "Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." **Id.** "*Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." **Id.**

As explained by the trial court in its March 7, 2017 opinion:

> Initially, we note that the second issue raised in Husband's Concise Statement alleges that this Court erred in ordering Husband to pay Wife an equitable distribution sum that was derived directly from monies Wife elected to include in Husband's income to calculate child support, APL and a mortgage contribution. Husband appears to be attempting to re-litigate an issue that has already been decided. The Court's award of equitable distribution was issued on June 9, 2014, affirmed by the Superior Court on June 26, 2015, and made final 30 days later after the time for filing a petition for allowance of appeal to the Pennsylvania Supreme Court was exhausted. When this Court's Order was entered, Husband's military retirement pay became an asset.

Trial Court Opinion, 5/30/2017, at 6.

We agree that Husband cannot relitigate this issue that was litigated in the trial court, and not raised in the prior appeal to this Court. Accordingly, we conclude Husband's claim is unavailing.[4]

In his third issue, Husband claims the trial court erred in ordering him to make direct payments to Wife because the concise language of the June 9, 2014, order specifically required direct payments to Wife only if the pension income was reduced in any way. As our discussion relating to Husband's first issue concerning contempt encompasses this argument, no further discussion is warranted here.

The fourth claim presented by Husband is that the trial court erred in not considering the tax consequences of the lump sum and monthly payments because the parties agreed and the court ordered that a QDRO be completed but deemed the payments in equitable distribution. Husband's complete argument consists of two sentences:

> Because the QDRO was not entered, [Husband] was taxed on the retirement but [Wife] received her payment of the pension without tax. Had the QDRO been entered and the pension distributed to [Wife], she would have paid the taxes on her portion as well.

Husband's Brief, at 24.

_____

[4] Nonetheless, as the trial court points out, and Wife also recognizes, Husband has a remedy by seeking modification of the support order based upon changed circumstances, specifically, the characterization of Husband's disposable retirement pay as an asset subject to equitable distribution, which is handled in the Court of Common Pleas of Centre County. *See* Trial Court Opinion, 5/31/2015, at 5-6; Wife's Brief at 16.

While Husband argues that if payment is not by QDRO, then the trial court should have considered the tax consequences of direct payment by Husband, we have found the trial court's June 9, 2014 order is clear that a QDRO was not a prerequisite for Wife's entitlement to payments. As such, the issue of tax consequences to Husband for direct payments should have been raised in Husband's direct appeal from the June 9, 2014 order. Accordingly, at this juncture, Husband's claim is unavailing. **See Balent, supra**.

In the fifth issue, Husband contends the trial court erred in not requiring Wife's payment from Husband's retirement to be distributed by a QDRO because the parties agreed and the court suggested a QDRO be completed. This issue has already been rejected in connection with our discussion of Husband's first issue, regarding contempt. Therefore, no further discussion is warranted.

In his sixth issue, Husband contends the trial court erred in not giving Husband credit toward the lump sum payment because Husband had paid child support, alimony *pendente lite* and mortgage contributions based on his retirement income. This issue is the same as Husband's second issue, which we have discussed above. Therefore, we need not address it.

The final issue presented by Husband is his contention the trial court erred in using June 9, 2014, as the retroactive date under the order because the date should have been when the retirement pay was withdrawn from the

calculation of income for support purposes. Again, this issue is intricately entwined with the second issue that has already been addressed and, therefore, no further discussion is warranted.

In sum, having carefully reviewed the contentions of Husband, and finding that these issues present no basis upon which to disturb the decision of the trial court, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2018